**HILL v. JAMES et al. (No. 458.)**

Court of Civil Appeals of Texas. Eastland.

June 8, 1928.

**1. Vendor and purchaser ☞101—Notice of intention to enforce contract by foreclosure proceedings held not notice of intention to forfeit contract for nonpayment of installments.**

Notice of intention to enforce contract for sale of property by foreclosure proceedings *held* not to constitute notice of vendor's intention to forfeit contract for nonpayment of installments of purchase price, former remedy being inconsistent with latter.

**2. Vendor and purchaser ☞101—Notice to purchaser, allowing no time for compliance with contract for paying balance due thereunder, held not to authorize forfeiture.**

Oral notice given purchaser which allowed him no time within which to comply with terms of contract by making payment of balance due thereunder *held* insufficient as predicate for declaring forfeiture of contract for nonpayment of installment.

Appeal from District Court, Taylor County; M. S. Long, Judge.

Action by Jeff Hill against Henry James and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Lee R. York, of Abilene, for appellant.

Davidson & Hickman, of Abilene, for appellees.

HICKMAN, C. J. The appeal is from a judgment denying appellant's prayer for the specific performance of a written contract for the sale of a lot situated in the city of Abilene. Patterson C. Fisher, independent executor of the estate of Julia Jeanette White, deceased, as owner of the lot, entered into a contract with appellant on January 22, 1923, by the terms of which appellant agreed to pay Fisher a total consideration of $350 therefor, $25 in cash and $5 per month thereafter, the first installment being payable on February 1, 1923. A deed of even date with the contract was executed by Fisher conveying the lot to appellant. This deed was delivered in escrow to Compere & Compere. The contract provided for the delivery of the deed by the escrow agents to appellant upon the payment by appellant of $175, one-half of the total purchase price. A vendor's lien was retained in the deed to secure the payment of a note for $175 executed by appellant to Fisher and delivered to the escrow agents along with the deed. The deed was to be delivered to appellant and the note to Fisher, under the terms of the contract, when the payments of appellant to the escrow agents aggregated $175, one-half the purchase price. Appellant paid the cash payment of $25, entered into possession of the premises, and erected a small house thereon. Thereafter appellant made payments at irregular intervals and in different amounts aggregating $130, besides certain interest payments. The last payment was on January 23, 1926. All payments were made to the escrow agents and by them credited upon the back of the contract. On December 4, 1926, Fisher assigned to Henry James and Jinks McGee "all of the right, title, and interest of the estate of the said Julia Jeanette White, deceased, in and to said contract and indebtedness therein described, and all other rights, titles, and interests which said estate owns in and to said contract and in and to said lot above described." After James and McGee purchased the contract they declared same forfeited and demanded possession of the lot. Appellant declined to surrender possession, but instituted this suit for specific performance, alleging a previous tender of the balance of the purchase price due under the terms of the contract. The case was tried before the court without the aid of a jury, resulting in a judgment that appellant take nothing and that the appellees James and McGee recover title and possession of the lot in controversy. The appeal is from that judgment.

The controlling question of law presented is whether, under all the facts, appellees had the right to terminate the contract and declare a forfeiture. Appellant was greatly in arrears on his payments, but Fisher, while the owner of the contract, indulged him in that regard, and payments were made and accepted long after they were due. The last payment, which was made on January 23, 1926, was for the installments due for the months of September and October, 1924. By the assignment of the contract from Fisher to James and McGee on December 4, 1926, its existence was recognized. If any forfeiture was properly declared, it was subsequent to said assignment. On January 21, 1927, the following letter was delivered to appellant:

"Mr. Jeff Hill, Abilene, Texas—Dear Sir: This is to notify you that unless you comply with your contract made for the purchase of lot No. 9, block No. 138, which contract is now held by me, and on which there is a considerable amount due and unpaid, not later than February 1, 1927, that I will be obliged to turn same over to my attorney and take action looking to the foreclosure of my lien on the property. So please give the matter your prompt attention according to the terms of the contract not later than that date.

"Yours truly,

"[Signed] Jinks McGee."

Appellee McGee testified:

"After the 1st of February, the time mentioned in that note—after the expiration of the notice—I went to his house and told him he would have to vacate. He never talked back or anything of the sort, and he said he had a man.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

there that would pay it out. I told him to vacate, yes, that I had waited as long as I was going to wait; that the taxes had not been paid and the property was in danger. That was prior to February 14th; that was along about the 1st or 2d of February."

The testimony of Geo. C. Cochran, one of appellant's attorneys, with reference to a tender by appellant prior to the institution of the suit, which testimony is undisputed in the record, is:

"I have talked to Mr. James about this. About February 15th—I don't know the exact date, but I believe it was February 14th—I went over to the bank and tendered Mr. James $269.41, in cash, and I asked him to give us his rights to that property, he refused to do it; he refused it. That $269.41 included principal and interest due under this contract, to the best of my knowledge. I did tell Mr. James if there was any difference I was ready to pay that, and he refused to accept it.".

We considered and reannounced the rule of law applicable to the facts in this case in the recent case of Buck v. De Shazo, 5 S.W.(2d) 878. Our statement of the rule in that case was:

"We have concluded that, in view of the indulgences which defendant had granted to plaintiff up to September, 1926, and in view of the fact that up to said time defendant recognized the existence of the contract, and at least conditionally accepted the lease money as a credit on the purchase price, defendant had no right to rescind the contract without notifying the plaintiff of his purpose to do so and naming some reasonable time in the future when plaintiff might perform his obligation in default of which the contract would be regarded as at an end. There is nothing in the contract to suggest that time was of the essence of the agreement. Even if such had been the case, same was waived by treating the contract as subsisting after the specified time of performance."

In addition to the authorities cited in that opinion, we cite Erwin v. Daniels, 34 Tex. Civ. App. 378, 79 S. W. 61, and Black on Rescission and Cancellation, § 604, from which we quote:

"If, however, there has been repeated delay on the part of the purchaser in making his payments, and habitual indulgence on the part of the vendor in giving him time, so that the course of their dealings might reasonably lead the vendee to believe that strict compliance with the terms of the contract would not in the future be insisted on, then it would be inequitable to permit the vendor to take sudden and sharp advantage of a subsequent default and declare a forfeiture forthwith; and in order to preserve his right to do so, it will be necessary for him to give the vendee notice that he intends thereafter to insist on strict punctuality in payment, and the notice must be so timed as to give the vendee a reasonable opportunity to comply with its terms."

[1, 2] We are not called upon to decide whether the ten days intervening between the date of the letter above copied, January 21, 1927, and the date therein named for performance, February 1, 1927, constituted a reasonable notice of intention to forfeit for nonpayment, for the reason that the letter did not contain any notice of intention to forfeit, but, on the contrary, was a notice of intention to enforce the contract by foreclosure proceedings. That remedy is inconsistent with the remedy of forfeiture. The oral notice given by the appellee McGee to appellant, as shown by McGee's testimony above copied, allowed appellant no time whatever within which to comply with the terms of the contract by making payment of the balance due thereunder. That notice, under all the authorities, was insufficient as a predicate for declaring forfeiture. We therefore conclude that the facts of this case bring it well within the rule announced by this court in the case of Buck v. De Shazo, supra.

The case should be remanded rather than rendered. The record is not sufficiently clear to enable us fully to adjust all the equities of the parties. This can best be done by the trial court. The result of the tax suit shown to have been pending when this case was tried may present equities for adjustment. Other questions involving minor details are raised, but are not fully developed in the record.

It is therefore our order that the judgment of the trial court be reversed and the cause be remanded for further proceedings not inconsistent with this opinion.