**FAIRFIELD FINANCIAL GROUP, INC., Linden Asset Management Company and Rick Renshaw, Appellants,**

v.

**Jim G. GAWERC, Appellee.**

**No. 01–90–01048–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 25, 1991.

Rehearing Overruled Aug. 15, 1991.

Mark C. Guthrie, Houston, for appellants.

William T. Powell, James P. Kennan and John H. Buck, Houston, for appellee.

Before DUNN and DUGGAN and FRANK C. PRICE, Assigned Justice *.

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

## OPINION

DUGGAN, Justice.

Appellants, defendants in the trial court, appeal the grant of a temporary injunction to appellee that enjoins appellants from evicting appellee from his homestead and from interfering with appellee's collection of rents from properties that are the subject of the underlying litigation.

Appellants bring 11 points of error which, for the purpose of discussion, we have consolidated into four. They contend the trial court abused its discretion in granting the temporary injunction, and that it erred in: (1) finding evidence that appellee had a probable right to recovery, and that appellants were not entitled to foreclose on properties that are the subject of the underlying litigation; (2) finding evidence that probable injury would result to appellee without the grant of injunctive relief; and (3) finding evidence that issuance of a temporary injunction was necessary to preserve the status quo. They further contend that the grant of the temporary injunction violated the Texas Rules of Civil Procedure, as the trial court failed to specify why injury would result. We affirm.

Appellee was the maker of three promissory notes, payable to the First Interstate Bank of Texas ("Bank"), in the aggregate principle amount of $522,000.[1] Payment was secured by deeds of trust covering appellee's homestead, vacant land, and investment properties.

In January 1989, appellee defaulted in his payments, and the bank accelerated his indebtedness and posted the properties for foreclosure. The bank and appellee negotiated and reached a settlement, embodied in a written agreement dated January 20, 1989. The written agreement consolidated the three notes, reduced the total amount owed the bank to $275,000, and modified the terms of repayment such that payoff would occur in four installments, beginning with an initial payment of $30,000 on January 20 and three additional payments of principal and interest to be made on March 31, June 6, and July 31, 1989. The agreement further provided that, alternatively, appellee could elect to allow foreclosure in lieu of any payment. The election would be "conclusively deemed" by appellee's failure to make timely payment, and any personal deficiency resulting from the bank's foreclosure was limited to $100,000.

Appellee paid the first installment of $30,000 in timely fashion. He made 12 additional payments over a 10–month period, but paid them on dates different from those specified in the restructuring agreement and in amounts differing from those set forth in the agreement.[2]

Testimony by appellee at the temporary injunction hearing was that the bank accepted the payments, though they materially varied from the payment schedule; no protest or demand for payment in conformity with the agreement was made by the bank; and no acceleration or foreclosure proceedings were initiated. Although the parties agree that the bank never informed appellee that he was released from the terms of the written agreement, appellee

---

1. Note 1, executed June 4, 1985, in the amount of $150,000 by appellee and his partner was collateralized by five investment properties.

   Note 2, executed January 17, 1986, in the amount of $282,000 was used by appellee to buy a townhome in Piney Point Village that he claims as his homestead. Note 1 is collateralized by the townhome itself.

   Note 3, executed July 27, 1987, in the amount of $90,000 was collateralized by a vacant lot.

2. The record indicates that the discrepancy in payments under the terms of the January 1989 agreement is:

   Payment 1, $30,000 (the initial payment), was paid in accordance with the restructuring agreement.

   Payment 2, $50,000, was due March 31, 1989. Appellee made six separate payments of $5,000 each to the bank over the period from March 28, 1989—May 30, 1989.

   Payment 3, $95,000 (principal reduction), was due June 6, 1989. Appellee made four payments of $5,000 each to the bank over the period from June 1, 1989—July 31, 1989.

   Payment 4, $100,000 (principle pay-off amount, plus all outstanding interest), was due July 31, 1989. Appellee paid $5,000 in August 1989 and $5,000 in October 1989. No further payments were made.

contends that oral modifications made by the bank to the written agreement allowed him to make payment in the amounts he did, and that extensions of time in which to make the payments were granted. The record shows the parties reached no oral agreement concerning when final payment would be made, when the agreement would be deemed completed, and when appellee would be released.

In March 1990, the bank sold appellee's promissory notes and assigned its liens to Fairfield Financial Group, Inc. and Linden Asset Management Co. Testimony at the hearing revealed that the two investors purchased the notes with full knowledge of the January 1989 agreement. After completing their purchase, appellants reviewed the notes, the loan history, and the January 1989 agreement. By letter to appellee dated July 19, 1990, appellants indicated their purchase of the notes, addressed the terms of the subsequent agreement with the bank, and concluded by giving notice of acceleration of the indebtedness:

> [Y]ou thereafter entered into an agreement (the "Forbearance Agreement") with First Interstate Bank of Texas, N.A., on January 20, 1989, concerning the $282,000 note, as well as the $90,000 Note and the $150,000 note. Based upon the information our clients obtained from First Interstate, you have failed to pay the amounts you promised to pay in the Forbearance Agreement. Further, the amounts you promised to pay pursuant to the Forbearance Agreement matured by terms of the Forbearance agreement on July 31, 1989, and were not thereafter paid. Due to your defaults under the Forbearance Agreement and its underlying notes, any and all sums you properly owe pursuant to the $90,000 Note, the $150,000 note and the $282,000 note are matured, due and payable to Fairfield, acting for itself and as agent for Linden.

Testimony from appellee at the hearing was that, on or about August 20, 1990, he offered payment to appellants in the amount due under the original terms of the January 1989 agreement. Appellants rejected this offer of redemption and indicated by letter on August 21 that fore-closure would result without payment of $338,000, an amount equal to their appraised value of the properties.

Appellants foreclosed on the properties on September 4, 1990, and appellee subsequently filed this cause of action, seeking a temporary injunction to prevent eviction from his homestead and interference by appellants in the collection of rental income from his other properties.

■ At a hearing upon the application for a temporary injunction, the only issue before the trial court is the right of the party seeking the injunction to preservation of the status quo of the subject matter of the suit, pending final trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978). It is not necessary for the applicant to establish that he will finally prevail on the merits. *Oil Field Haulers Ass'n v. Railroad Comm'n*, 381 S.W.2d 183, 196 (1964). Instead, the applicant must merely: (1) plead a cause of action; (2) show a probable right to the relief sought upon trial on the merits; and (3) show a probable injury during the interim. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968); *Navarro Auto–Park, Inc. v. City of San Antonio*, 574 S.W.2d 582, 585 (Tex.Civ.App.—San Antonio 1978), *writ ref'd n.r.e. per curiam*, 580 S.W.2d 339 (Tex.1979).

■ The appeal of an order granting or denying a temporary injunction is an appeal from an interlocutory order. Accordingly, the merits of the underlying action are not within the scope of appellate review. *Davis*, 571 S.W.2d at 861. Review of the trial court's actions in granting or denying the temporary injunction is strictly limited to a determination of whether there has been a clear abuse of discretion. *Id.* at 862. We may not substitute our judgment for that of the trial court, but must only determine whether the court's actions were so arbitrary as to exceed the bounds of reasonable discretion. The mere fact that a trial judge may reach a different conclusion from that reached by this Court does not demonstrate that an abuse of discretion has occurred. *Landry v. Travelers Ins.*

*Co.,* 458 S.W.2d 649, 651 (Tex.1970); *Philipp Bros. Inc. v. Oil Country Specialists, Ltd.,* 709 S.W.2d 262, 265 (Tex.App.—Houston [1st Dist.] 1986, writ dism'd w.o.j.).

■ In reviewing an order granting or denying a temporary injunction, the appellate court draws all legitimate inferences from the evidence and indulges all reasonable presumptions in support of the trial court's decision. *Metropolitan Life Ins. Co. v. La Mansion Hotels, Ltd.,* 762 S.W.2d 646, 648 (Tex.App.—San Antonio 1988, writ dism'd w.o.j.); *Lee v. Lee,* 359 S.W.2d 654, 658 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). When the pleadings and evidence support a finding of probable injury and right of recovery, this Court will not disturb the order granting or denying the injunction on appeal. *Metropolitan Life Ins. Co.,* 762 S.W.2d at 648.

The standard this Court must apply in searching for an abuse of discretion is misapplication of the law by the trial court to established facts, or that the evidence before us does not reasonably support the findings of probable injury or probable right to recovery. *State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex. 1975). The trial court is clothed with broad discretion in its determination of whether to issue temporary injunctive relief. When that discretion is exercised, it will not be overturned on appeal absent evidence in the record that discloses a clear abuse of that discretion. *Ogden v. Coleman,* 660 S.W.2d 578, 582 (Tex.App.—Corpus Christi 1983, no writ).

## APPELLEE'S PROBABLE RIGHT OF RECOVERY

■ In six points of error, which we address as one, appellants assert there is no evidence or insufficient evidence to support appellee's prima facie showing that appellants' foreclosure of the subject properties was wrongful; that appellants were, accordingly, not entitled to foreclose on the properties; and that appellee had a probable right to recovery as a result of the wrongful disclosure. Our review of the record reveals sufficient evidence to show that appellee made a prima facie case of probable recovery under the Texas doctrine of waiver.

At the hearing, appellee testified that he made nonconforming payments under the January 1989 agreement during the period from March until October 1989. This testimony was uncontroverted and, in fact, corroborated by appellants' witnesses. Appellee's statements that oral modifications to the written agreement had been made were also uncontested. The record is silent as to any demand by the bank for conformance with the terms of the agreement. Appellants and the bank admitted full knowledge and a willing acceptance of the irregular payments. The record further reflects that the bank's acceptance of those payments, in variance with the agreement terms, was before and after the agreed performance dates under the January 1989 agreement, and continued even after the date scheduled for final performance under the written agreement. Evidence of appellants' knowing acceptance of the variance in payment and the bank's extensions is indicated by testimony of the bank officer who is alleged to have approved the change in terms, and follows:

A: I transferred control of the credit to Mark Lindquist [of Fairfield] in July.

Q: Did you tell Mark when you transferred it, "this is a default and everything needs to be foreclosed upon now?"

A: I didn't say that specifically, no.

Q: Did you tell him you were working with Mr. Gawerc?

A: I told him that Mr. Gawerc was not making his payments as specified on the agreement, that I had accepted payments other than the payments specified under the agreement; but that the agreement was soon to expire and I felt a decision would need to be made and I didn't feel like I was the one that should make that decision.

Such testimony, when viewed against the absence of any evidence that the bank protested appellee's irregular payments or demanded conformity with the written agreement, supports a probable recovery for appellee under the theory of waiver and thus, wrongful foreclosure.

Well-seasoned precedent supports appellee's contention of wrongful foreclosure. Where the obligor on a purchase money debt fell into arrears on his payments, but was indulged by his creditor who accepted payments in variance with the terms of their agreement, an appellate court found that notice of forfeiture under the contract and subsequent demand for eviction was inappropriate when insufficient opportunity for redemption was afforded the obligor. *Hill v. James*, 7 S.W.2d 910, 911 (Tex.Civ. App.—Eastland 1928, no writ). Like the debtor in the case now before this Court, the appellant in *Hill* was continuously tardy in making payments, his creditor sold the note to assignees, and they announced their intent to enforce their rights under the installment contract.

The *Hill* court concluded that, in view of the indulgence in payment variance, the recognition of the contract existence by the parties, and the creditor's acceptance of irregular payments, the obligees had no right to contract rescission without notification to obligor and were obliged to set reasonable conditions for performance by which the obligor might satisfy the terms of the contract. "Even [if time had been of the essence], same was waived by treating the contract as subsisting after the specified time of performance." *Id.* at 911 (quoting *Buck v. De Shazo*, 5 S.W.2d 878 (Tex.Civ.App.—Eastland 1928, writ dism'd w.o.j.)). The court of appeals held that a tardy debtor, who had been led to believe that strict compliance with the terms of the contract would not be insisted upon, would suffer an inequity if his vendor should take sudden advantage of a subsequent default and declare a forfeiture:

> [I]n order to preserve his right to do so, it will be necessary for him to give the vendee notice that he intends thereafter to insist on strict punctuality in payment, and the notice must be so timed as to give the vendee a reasonable opportunity to comply with its terms.

7 S.W.2d at 911 (quoting *Erwin v. Daniels*, 34 Tex.Civ.App. 378, 79 S.W. 61 (Texarkana 1904, no writ)). We note that the obligor in the instant case, when acceleration and demand was made, offered full payment in accordance with the terms of the January 1989 agreement, but the payment was refused. Instead, appellants made demand for a sum never contemplated by the parties and never included in any agreement between them.

■ We conclude that an obligee may waive the obligor's requirement for strict compliance with the terms of a contract if the obligee expressly or impliedly assents to the obligor's nonconforming conduct. *See Seismic & Digital Concepts, Inc. v. Digital Resources Corp.*, 590 S.W.2d 718, 721 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ) ("A waiver may result from one party's express or implied assent to the continued performance of the other party without objection to the delay.").

Appellants argue that two exceptions apply. First, they contend that a waiver is ineffective if it occurs *after the time for performance has expired,* and when the purported waiver materially affects the value received by the obligor. *See U.S. Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex. 1971). In *Bimco,* the supreme court held that waiver may be effective after expiration of time for performance only if it is not a material part of the agreed performance and non-performance does not materially affect the value received by an obligor. *Id.* In the instant case, evidence of waiver of payment amounts and extension of payment dates occurred before the March 31, 1989, payment was due. Further evidence of waiver of performance occurred during the executory period of the January 1989 agreement, and continued after the final payment due date. The rule expressed in *Bimco* does not apply to these facts. Apparently, the bank accepted payments not in accordance with the written agreement. If the bank waived its rights for timely payment, it became subject to the requirement of *Hill*, above, and lost its legal right to foreclose without allowing reasonable opportunity for appellee's redemption.

■ Appellants also argue that if waiver was implied, then a reasonable time for appellee's performance had transpired be-

fore the date of foreclosure. This begs the question of waiver, for if the bank had accepted and impliedly agreed to such purportedly indefinite terms of payment, timely enforcement of any further contract rights was the responsibility of the bank as obligee, not appellee, the obligor. The bank rested and made no further demand for payment in conformity with the terms of either the written agreement or oral modifications after October 1989.

We hold that appellee made a prima facie showing of entitlement to relief under the Texas law of waiver, and that the trial court's recognition of this fact was based on sufficient evidence. The question of whether appellee defaulted under the January 1989 agreement, so as to entitle the assignee appellants to legally foreclose on the subject properties, is a fact issue to be resolved at trial. Appellants' points of error 1, 2, 8, 9, 10, and 11, addressed as our first point of error, are overruled.

### APPELLEE'S PROBABLE INJURY

■ In two points of error, which we address as our second point, appellants contend that the trial court abused its discretion in granting injunctive relief because there was no evidence or insufficient evidence showing probable injury to appellee.

Appellee made a prima facie showing of probable injury so as to justify a grant of injunctive relief. It was uncontested at the hearing that appellant's Piney Point townhome was his homestead, and that appellants sought to foreclose on this property and evict him from it. It was also uncontested that appellants sought to foreclose on appellee's rental property and interfere with his collection of rents. Because we have already concluded that appellee has shown a probable right to recovery at trial, it follows that loss of his rights to possession of his homestead and interference with collection of rental income would result in probable injury. Such showing of imminent harm supports the requirement for probable injury. *Inex Indus., Inc. v. Alpar Resources, Inc.*, 717 S.W.2d 685, 687–88 (Tex.App.—Amarillo 1986, no writ).

The trial court's actions were not so arbitrary or such a misapplication of law to the facts as to demonstrate a clear abuse of discretion. Appellants' points of error three and four, addressed as our second point of error, are overruled.

### PRESERVATION OF THE STATUS QUO

■ In two points of error, which we consider as the third point, appellants contend there was no evidence or insufficient evidence presented at the hearing to show a prima facie case that the temporary injunction was necessary to preserve the status quo. Appellants argue that after the foreclosure, which is at issue in the underlying lawsuit, they held title to the properties. They contend that appellant is now a mere trespasser, and that the grant of a temporary injunction therefore disrupts the status quo.

We disagree. The question of appellee's default under the terms of the January 1989 agreement is an issue preserved for trial on the merits. As stated above, appellant made a prima facie showing of probable entitlement to relief under a defensive theory of waiver, and he has further demonstrated probable imminent harm. The central purpose of the trial court's grant of a temporary injunction is to preserve the status quo pending resolution of the dispute. *Davis*, 571 S.W.2d at 862. Status quo is the "last actual, peaceable, noncontested status that precedes the pending controversy." *Ogden*, 660 S.W.2d at 581.

We hold that, as a matter of law, the status quo in this case is appellee's continued collection of rents and possession of the properties subject to the injunction at the time his status was challenged. Were we to determine that the injunction somehow disrupted the status quo, we would intrude upon the province of the trial court in deciding the merits of this case. Appellants' points of error five and six, addressed as our third point of error, are overruled.

### SUFFICIENCY OF THE INJUNCTIVE ORDER

■ In their final point of error, appellants maintain that the trial court abused

its discretion in issuing a temporary injunction because the injunction fails to specify why an injury will be suffered in the absence of a temporary injunction. Our examination reveals, however, that the injunction is in full compliance with Tex.R.Civ.P. 683. It is specific, describes in reasonable detail the acts restrained, and describes as the reasons for its issuance appellee's imminent eviction, interference with his right to collect rental income, and the lack of any adequate remedy at law. Appellants' point of error seven is overruled.

The trial court abuses its discretion when the law is misapplied to established facts, or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery. *Southwestern Bell Tel. Co.*, 526 S.W.2d at 528. There was no misapplication of law to the facts at the hearing, and the record reveals ample evidence to support the court's grant of the temporary injunction.

We are unable to detect a clear abuse of discretion and, accordingly, we affirm the order of the trial court.

DUNN, J., not participating.

