# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-10650

United States Court of Appeals
Fifth Circuit

**FILED**
June 17, 2020

Lyle W. Cayce
Clerk

HOOVER PANEL SYSTEMS, INCORPORATED,

  Plaintiff – Appellant,

v.

HAT CONTRACT, INCORPORATED,

  Defendant – Appellee.

*************************************************************************

Consolidated with 19-10702

HOOVER PANEL SYSTEMS, INCORPORATED,

  Plaintiff – Appellee,

v.

HAT CONTRACT, INCORPORATED,

  Defendant – Appellant.

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:17-CV-3283

No. 19-10650
c/w No. 19-10702

Before ELROD, SOUTHWICK, and HAYNES, Circuit Judges.

PER CURIAM:*

This appeal arises out of a dispute between Hoover Panel Systems, Inc. and HAT Contract, Inc. involving the development of a power beam for desks. Hoover claims that once the development of a prototype was complete, HAT sold the prototype to other manufacturers. Hoover sued HAT, claiming breach of contract, breach of oral contract, trade secret misappropriation, and a variety of quasi-contract claims. HAT moved for summary judgment on Hoover's breach of contract claim and alternatively asserted the defenses of waiver and ratification. HAT also moved for summary judgment on Hoover's oral contract, trade secret misappropriation, and quasi-contract claims. The district court granted HAT's motion for summary judgment on each of Hoover's claims and now Hoover appeals. We reverse the district court's grant of summary judgment on Hoover's breach of contract claim, on HAT's alternative arguments of waiver and ratification, and on the trade secret misappropriation claim. We affirm the district court's grant of summary judgment on Hoover's breach of oral contract and quasi-contract claims.

HAT separately appeals the district court's order denying its bad faith counterclaim against Hoover. We affirm the district court's judgment on HAT's untimely counterclaim.

I.

In 2014, HAT approached Hoover, a product developer, about manufacturing and developing a power beam for desks "in an open-office

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10650
c/w No. 19-10702

environment" for HAT to sell. Hoover was initially hesitant to design a product with HAT because HAT had a history of using overseas manufacturers. Nonetheless, after HAT guaranteed Hoover that it would not have someone else copy and make the product, both parties signed and executed a confidentiality agreement. The pertinent part of the agreement reads as follows:

> Both parties agree that all information disclosed to the other party, such as inventions, improvements, know-how, patent applications, specifications, drawings, sample products or prototypes,[]engineering data, processes, flow diagrams, software source code, business plans, product plans, customer lists, investor lists, and any other proprietary information shall be considered confidential and shall be retained in confidence by the other party.

> 1. Both parties agree to keep in confidence and not use for its or others benefit all information disclosed by the other party, which the disclosing party indicates is confidential or proprietary or marked with words of similar import (hereinafter INFORMATION). Such INFORMATION shall include information disclosed orally, which is reduced to writing within five (5) days of such oral disclosure and is marked as being confidential or proprietary or marked with words of similar import.

After both parties executed and signed the confidentiality agreement, Hoover then developed a prototype of the product. During the development phase, Hoover suggested that HAT should use an existing "foot," or base for the prototype, and HAT suggested that a local metal shop could develop a foot in accordance with the prototype's needs. Later, "multiple dealers" provided feedback to Hoover and HAT about the then-existing prototype of the product. Hoover also supplied third parties with drawings and "showroom samples." At no point during the development of the prototype did Hoover mark any information as confidential.

No. 19-10650
c/w No. 19-10702

After Hoover completed the development of the prototype and forwarded it to HAT for approval, HAT approved the prototype and placed several orders with Hoover. Later, after a much smaller number of orders than Hoover expected, HAT stopped placing orders for the product. Hoover eventually learned that HAT sent the prototype to an overseas manufacturer and started using it to manufacture products that were similar to the products Hoover manufactured. Hoover also discovered that several overseas companies used the prototype to market to other consumers.

Hoover sued HAT in state court, and HAT removed the case to the federal district court on diversity grounds. Hoover then filed its second amended complaint, declaring breach of contract, trade secret misappropriation, promissory estoppel, quantum meruit, and unjust enrichment. HAT filed a motion for summary judgment on all of Hoover's claims. The district court granted HAT's motion for summary judgment, thereby dismissing all of Hoover's claims against HAT.

II.

We turn first to Hoover's appeal. Hoover contests the district court's grant of summary judgment on its breach of contract claim and HAT's waiver and ratification claim. Hoover also appeals the grant of summary judgment on its breach of oral contract, trade secret misappropriation, promissory estoppel, quantum meruit, and unjust enrichment claims. We address each issue in turn.

We review a grant of summary judgment *de novo. Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 793 (5th Cir. 2010). A grant of summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.*

No. 19-10650
c/w No. 19-10702

A.

We first determine whether the district court erred in granting HAT's motion for summary judgment on Hoover's breach of contract claim. Hoover and HAT do not dispute that a valid written contract exists. However, both parties dispute its meaning. The dispute surrounds whether Hoover was required to label the information it wanted to keep confidential or whether shared information, specifically the prototype, was to be kept confidential under the agreement, even without a confidentiality marking. Essentially, Hoover and HAT dispute the correct meaning of the following portion of the written confidentiality agreement:

> Both parties agree that all information disclosed to the other party, such as inventions, improvements, know-how, patent applications, specifications, drawings, sample products or prototypes,[]engineering data, processes, flow diagrams, software source code, business plans, product plans, customer lists, investor lists, and any other proprietary information shall be considered confidential and shall be retained in confidence by the other party.

> 1. Both parties agree to keep in confidence and not use for its or others benefit all information disclosed by the other party, which the disclosing party indicates is confidential or proprietary or marked with words of similar import (hereinafter INFORMATION). Such INFORMATION shall include information disclosed orally, which is reduced to writing within five (5) days of such oral disclosure and is marked as being confidential or proprietary or marked with words of similar import.

The district court did not address the agreement's opening paragraph, but it concluded that the contract required Hoover to mark any confidential information as such for it to be considered confidential under the agreement. And, as "[i]t is undisputed that [Hoover] failed to [designate any items or information as confidential] and as a result, failed to perform its condition

No. 19-10650
c/w No. 19-10702

precedent to [HAT's] performance," the district court granted HAT's motion for summary judgment on Hoover's breach of contract claim.

On appeal, Hoover argues that the contract required the parties to maintain the confidentiality of Hoover's prototype regardless of whether it was marked. Hoover contends that the district court's interpretation did not consider the entire agreement and rendered the opening paragraph meaningless. Conversely, HAT claims that the district court's interpretation was correct. HAT argues that Hoover's interpretation renders the first numbered paragraph meaningless because there would be no need for the explicit instructions for labeling in the first numbered paragraph if the opening paragraph automatically considered certain items confidential.

Here, we conclude that summary judgment was improper for two reasons. First, the effect of the summary judgment is to render the opening paragraph of the contract meaningless, contrary to contract interpretation tools. And second, summary judgment is not appropriate where, as here, multiple permissible interpretations exist. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004).

Both parties agree that the substantive law of Texas applies to this dispute. *See Preston Expl. Co., v. GSF, L.L.C.*, 669 F.3d 518, 522 (5th Cir. 2012) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78–79 (1938)). Under Texas law, our primary concern in interpreting a contract "is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Courts, in accomplishing this objective, "should examine and consider *the entire writing* in an effort to harmonize and give effect to *all the provisions* of the contract so that none will be rendered meaningless." *Id.* "[A]ll the provisions must be considered with reference to the whole instrument," and earlier terms must be favored over subsequent terms.

6

*Id.* If a contract has conflicting provisions, "the specific trumps the general." *Transitional Learning Cmty. v. U.S. Office of Personnel Mgmt.*, 220 F.3d 427, 432 (5th Cir. 2000) (quoting *Millgard Corp. v. McKee/Mays*, 49 F.3d 1070, 1073 (5th Cir. 1995)).

Applying these and other relevant contract interpretation rules demonstrates that summary judgment is improper as multiple plausible interpretations exist. *See e.g., Coker*, 650 S.W.2d at 393 ("[T]erms stated earlier in an agreement must be favored over subsequent terms."); *Transitional Learning Cmty.*, 220 F.3d at 432 ("[W]hen two provisions of a contract conflict, the specific trumps the general." (quoting *Millgard*, 49 F.3d at 1073)).

Moreover, the district court erred in granting summary judgment on the breach of contract claim because multiple plausible interpretations exist. When a contract interpretation question is raised on summary judgment, a material fact issue concerning the parties' intent precludes summary judgment "when there is a choice of reasonable interpretations of the contract." *Gonzalez*, 394 F.3d at 392 (quoting *Amoco Prod. Co. v. Texas Meridian Resources Explor. Inc.*, 180 F.3d 664, 669 (5th Cir. 1999)); *see S. Nat. Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir. 1986). "[A] contract is ambiguous . . . when the application of the applicable rules of interpretation . . . leave it genuinely uncertain which one of the two meanings is the proper meaning." *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 431 (5th Cir. 2003) (quoting *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc,* 596 S.W.2d 517, 519 (Tex. 1980)).

Here, the tension between the opening and first numbered paragraph "leave[s] it genuinely uncertain" what the contract means. *Id.* (quoting *R & P Enters.*, 596 S.W.2d at 519)). Several plausible interpretations exist. For

No. 19-10650
c/w No. 19-10702

instance, Hoover reads the opening paragraph to apply to the prototype, the primary property the confidentiality agreement was entered into to protect. Hoover argues that the first numbered paragraph applied to other information and communications that were not obviously confidential under the opening paragraph.

In contrast, HAT reads the opening paragraph to speak generally about the content of the agreement, and the first numbered paragraph to provide the specific instructions needed to put the confidentiality agreement into effect.

There are additional possible interpretations. One such interpretation is that under the agreement, proprietary information is automatically confidential while all other information must be marked. The opening paragraph states that "proprietary material shall be considered confidential," and in the first numbered paragraph, "all information . . . which the disclosing party indicates is confidential or proprietary or marked with words of similar import" is considered confidential.  Another plausible reading is that the opening paragraph provides the scope for all information that is confidential while the first numbered paragraph functions as a housekeeping paragraph, providing instruction on how to mark information as confidential, but not requiring labeling as a condition precedent.

Here, "there is a choice of reasonable interpretations of the contract." *Gonzalez*, 394 F.3d at 392. This ambiguity precludes summary judgment. *See Instone Travel Tech*, 334 F.3d at 431. Accordingly, we reverse the district court's grant of summary judgment on Hoover's breach of contract claim and remand for further proceedings.

## B.

The district court also granted summary judgment to HAT on the alternative ground that Hoover waived and ratified any alleged breach. We

8

conclude that this was in error and reverse because disputed material facts remain.

HAT argues that Hoover waived its right to enforce the agreement and ratified HAT's conduct because Hoover suggested that HAT send the sample to a third party, that Hoover was contemporaneously aware that third parties saw versions of the sample throughout the development phase, and that Hoover supplied third parties with drawings and "showroom samples."

Hoover argues that a fact question exists precluding HAT from conclusively establishing either waiver or ratification. Specifically, Hoover contends that HAT never told Hoover that it was sending the prototype to any third-party manufacturers and that Hoover never authorized HAT to do so. Hoover argues that its suggestion to HAT to use an existing base for the prototype does not mean that Hoover knew that HAT would send the prototype to an overseas competitor. Hoover claims that HAT did not seek advance permission to send the prototype to other companies and that HAT never told Hoover the full extent to which it had shared the prototype.

Under Texas law, waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 298 (5th Cir. 2010) (quoting *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987)). "[A]n obligee may waive the obligor's requirement for strict compliance with the terms of a contract if the obligee expressly or impliedly assents to the obligor's nonconforming conduct." *Id.* (quoting *Fairfield Fin. Grp., Inc. v. Gawerc*, 814 S.W.2d 204, 209 (Tex. App.—Houston [1st Dist.] 1991, no writ)). If a litigant wants to demonstrate implied waiver, the litigant must "clear a high threshold by clearly demonstrating the other party's intent to relinquish a right." *Id.* at 299. The facts are in dispute as to whether HAT told Hoover it was sending the

No. 19-10650
c/w No. 19-10702

prototype to overseas competitors and whether Hoover authorized HAT to do so.

Likewise, a material fact issue exists with the ratification claim. Ratification, under Texas law, "is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate." *R & L Inv. Prop., L.L.C. v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013) (quoting *Fortune Prod. Co. v. Conoco Inc.*, 52 S.W.3d 671, 678 (Tex. 2000)). As the movant, HAT bears the burden of proof and "must establish beyond peradventure *all* of the essential elements of the . . . defense to warrant judgment in his favor." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Here, a factual dispute exists as to whether Hoover was told about the full extent of HAT's actions. It is therefore unclear whether Hoover was made aware of *all* material facts when it allegedly ratified HAT's conduct.

Viewing the facts and evidence in the light most favorable to the non-movant, HAT did not establish beyond peradventure all of the essential elements of waiver or ratification. *See Chaplin*, 307 F.3d at 372. Accordingly, we reverse the district court's grant of summary judgment on HAT's alternative arguments of waiver and ratification.

C.

We next address the issue of whether the district court erred in granting summary judgment on Hoover's oral contract claim. Hoover's oral contract claim arises from HAT's alleged oral guarantee that it would not have an overseas competitor copy and manufacture the product. On appeal, Hoover argues that the district court improperly granted summary judgment to HAT on this claim. HAT argues that Hoover's oral contract claim fails because

10

No. 19-10650
c/w No. 19-10702

Hoover did not plead the requisite elements of contract formation and because the written agreement addresses the same subject matter as the alleged oral agreement.

Under Texas law, a party must establish contract formation by proving "an offer and acceptance and a meeting of the minds on all essential terms." *Ibe v. Jones*, 836 F.3d 516, 524 (5th Cir. 2016) (quoting *Principal Life Ins. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454–55 (Tex. App.—Dallas 2012, pet. denied)). In this case, the alleged oral contract is based on HAT's promise not to take Hoover's product and have it copied and manufactured overseas. Hoover never responded to HAT's offer and never followed through on that proposal. Hoover also rejected HAT's offer related to exclusivity. Hoover has not sufficiently established that acceptance of the oral contract occurred.

Furthermore, even assuming that an oral contract between Hoover and HAT had been formed, the oral contract would fail because of the doctrine of merger. "[A] written contract is presumed to embody the entire agreement between the parties," *N.K. Parrish, Inc. v. S.W. Beef Indus. Corp.*, 638 F.2d 1366, 1368–69 (5th Cir. Mar. 1981), and under the doctrine of merger, the prior negotiations and alleged oral promises between the parties will, therefore, be "merged into [the] written contract," *Harville Rose Serv. v. Kellogg Co.*, 448 F.2d 1346, 1349 (5th Cir. 1971). In this case, both the written agreement and the alleged oral promise cover the confidentiality concerns of the parties. Specifically, both the written and oral contracts limit HAT's ability to use other manufacturers. Given that the alleged oral promise was made before or contemporaneous with entering into the written agreement, the doctrine of merger presumes that the parties reduced the alleged oral contract into the written agreement. *See Harville*, 448 F.2d at 1349. Therefore, Hoover's oral contract claim must fail.

11

No. 19-10650
c/w No. 19-10702

Accordingly, we affirm the district court's grant of summary judgment on the breach of oral contract claim.

D.

Next, we address whether the district court erred in granting summary judgment on Hoover's misappropriation of trade secrets claim. Hoover alleges that HAT misappropriated its trade secret by providing the prototype to a third party.

Under Texas law, a claimant must establish the following to prove trade secret misappropriation: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 600 (5th Cir. 2015) (quoting *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013)). Discovery by "improper means" includes "theft, fraud, unauthorized interception of communications, inducement of or knowing participation in a breach of confidence, and other means either wrongful in themselves or wrongful under the circumstances of the case." *Wellogix,* 716 F.3d at 876 (quoting *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 636 (Tex. App.—Fort Worth 2007, pet. denied)).

The district court granted HAT's motion for summary judgment on this claim. Because Hoover volitionally sent HAT the alleged trade secret without HAT engaging in improper or unlawful activity, the district court reasoned that Hoover could not establish the second prong of trade secret misappropriation. But Hoover argues that its misappropriation of trade secrets claim is not negated by the fact that it voluntarily shipped the prototype to HAT because the written agreement required HAT to maintain its confidentiality.

12

No. 19-10650
c/w No. 19-10702

We reverse the district court's grant of summary judgment and remand for further findings on this question. We disagree with the conclusion that simply because Hoover willingly shipped the prototype to HAT, it would be impossible for Hoover to establish that HAT acquired the trade secret through improper means. As a "breach of a duty to maintain secrecy" is a way of establishing improper means, Hoover's allegation that HAT breached the confidentiality agreement creates a factual issue as to whether HAT misappropriated Hoover's alleged trade secret. *See Graduate Med. Educ. Dev., LLC v. St. George's Univ., Ltd.*, No. H-15-2641, 2016 WL 5844707 (S.D. Tex. Oct. 6, 2016) (explaining that a "breach of a duty to maintain secrecy is sufficient to show trade secret misappropriation"); *see also Wellogix*, 716 F.3d at 876 (holding sufficient evidence of improper acquisition existed when parties entered into confidential agreements that gave the offending party access to the alleged trade secret materials).

Accordingly, we reverse the grant of summary judgment on Hoover's misappropriation of trade secrets claim and remand to the district court.

E.

Next, we determine whether the district court erred in granting summary judgment on Hoover's quasi-contract claims, including promissory estoppel, quantum meruit, and unjust enrichment.[1] In this case, Hoover bases

---

[1] Promissory estoppel requires the following elements: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983).

Under quantum meruit, a claimant must prove the following elements: (1) "valuable services were rendered or materials furnished;" (2) "for the person sought to be charged;" (3) "which services and materials were accepted by the person sought to be charged, used and enjoyed by him;" (4) "under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)

13

No. 19-10650
c/w No. 19-10702

its quasi-contract claims on HAT's alleged oral promise not to take Hoover's systems, prototypes, or designs and manufacture them abroad. On appeal, HAT contends that Hoover's quasi-contract claims fail because they cover the same subject matter as the written confidentiality agreement. Hoover disagrees and claims that it can plead its quasi-contract claims in the alternative. We affirm the district court's grant of summary judgment on Hoover's quasi-contract claims because a valid contract covers the subject matter of Hoover and HAT's dispute.

Generally, a party may not recover under a quasi-contract theory "when a valid, express contract covers the subject matter of the parties' dispute." *Fortune Prod. Co.*, 52 S.W.3d at 684. Similarly, recovery under an equitable theory is generally inconsistent when a valid agreement already addresses the matter. *Id.*

Here, the parties do not dispute that a valid written contract exists and that Hoover's equitable theories of recovery concern the same subject matter as the written confidentiality agreement. Accordingly, we affirm.

III.

Finally, we address HAT's appeal. HAT appeals the district court's order declining consideration of HAT's bad faith counterclaim because it was untimely. Because the district court did not abuse its discretion in denying consideration of HAT's bad faith counterclaim, we affirm.

---

Under unjust enrichment, a party may recover "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)).

14

No. 19-10650
c/w No. 19-10702

During the discovery period, HAT took the deposition of a corporate representative, Alex Hoover, on February 7, 2019. On March 28, 2019, HAT received a finalized and signed transcript from Alex Hoover's deposition.

On April 18, 2019, HAT then requested leave to file a second amended answer after the amendment deadline had passed on April 16, 2019, seeking to assert the affirmative defenses of waiver and ratification and a counterclaim of bad faith. The district court originally denied HAT's motion for leave to file a second amended answer in all aspects because it was too close to the trial date. However, on May 8, 2019, the district court *sua sponte* reconsidered HAT's motion for leave to file a second amended answer and granted HAT's motion for leave.

On May 10, 2019, when the only live claim was HAT's bad faith counterclaim, the district court issued an order that amended its May 8 order and clarified that it would not consider HAT's bad faith counterclaim because it was untimely.

We review a district court's denial of a motion to amend for abuse of discretion. *Crostley v. Lamar County*, 717 F.3d 410, 420 (5th Cir. 2013). A district court may grant leave to amend after the deadline has passed only "upon a showing of good cause." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting Fed. R. Civ. P. 16(b)). Under the good cause standard, the party seeking relief must show "that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Id.* (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)). District courts have broad discretion in granting or denying leave to amend. *See id.*

HAT claims, among other things, that it could not reasonably meet the April 16, 2019 pleadings deadline because its bad faith counterclaim came to

15

No. 19-10650
c/w No. 19-10702

light only after it took the deposition of Alex Hoover on February 7, 2019. HAT argues that because it filed its motion for leave to amend only two months thereafter, it was not untimely. But, HAT did not take Alex Hoover's deposition until almost a year after the pleadings deadline had passed, and it waited for two months after the deposition to file its motion to amend.

The district court was well within its discretion in determining that HAT's bad faith counterclaim would disrupt "the integrity and purpose of the pretrial order" by being untimely. *S&W Enters.*, 315 F.3d at 535. We affirm the district court's judgment as to HAT's bad faith counterclaim.

IV.

For the foregoing reasons, we REVERSE the district court's grant of summary judgment on Hoover's breach of contract claim, HAT's waiver and ratification defense, and Hoover's trade secret misappropriation claim. We REMAND those issues to the district court. We AFFIRM the district court's judgment on Hoover's oral contract and quasi-contract claims. And we AFFIRM the district court's judgment on HAT's bad faith counterclaim.